This is a contract case.
The defendant-Bender operates River Yacht Basin, Inc., on land leased from the plaintiff. The plaintiff brought this action to terminate the lease and to recover delinquent rental payments. The trial court, after an ore tenus hearing, awarded the plaintiff rent due but refused to terminate the lease. Plaintiff appeals.
The dispositive issue on appeal is whether the trial court erred in refusing to terminate the lease. We find no error and affirm.
The record reveals the following: The plaintiff is a nonprofit social club which owns river front property on Dog River in Mobile County. In 1960, the plaintiff leased a portion of this property to defendant for thirty years. The leased property adjoins plaintiff's club facilities.
Under the terms of the lease, the defendant was to build and operate a full-service marina. The lease required defendant to maintain the marina in a clean condition and in good repair. The contract further required defendant to remit 3% of its gross monthly receipts to plaintiff as rent.
At the time the lease was executed, the plaintiff had an active membership of approximately two hundred fifty and had plans for construction of a new clubhouse. Over the years, however, plaintiff's membership decreased to approximately fifty members (with only a few having boats) and the proposed new clubhouse was never constructed. In 1970, plaintiff leased its club facilities to the Elks Club.
Because of the decline of plaintiff's membership, defendant gradually cut back on the services it offered. By the time plaintiff filed its complaint, defendant's principal business was the rental of boat stalls.
The record further reveals that defendant used trash and debris for landfill. Some of this debris was scattered over defendant's premises. Additionally, there was testimony that some of the marina facilities deteriorated to an unsafe and unsightly condition. Finally, the record indicates that a boat sales company stalled four boats on defendant's premises during 1973, which boats were eventually sold for a price of approximately $119,000.
The learned judge found that the lease was ambiguous with respect to whether the *Page 1028 
defendant was unconditionally bound to maintain a full-service marina. In construing the contract, the court determined that the parties intended that defendant maintain a full-service marina in order to provide services to plaintiff's members. However, the court found that because there was no longer any significant demand for a full-service marina due to the decrease in plaintiff's membership, the contract did not require defendant to continue an unprofitable business.
On appeal, the plaintiff, through able counsel, initially argues that the trial court erred to reversal in finding the contract to be ambiguous.
In reviewing the trial court's decree we are guided by certain well recognized legal principles.
Ambiguities in a contract are, as a matter of law, to be resolved by the court. International Harvester Co. v. Bostick'sInt'l., Inc., Ala.Civ.App., 365 So.2d 84 (1978). In construing ambiguous contracts, a court will look to the intention of the parties. Charles H. McCauley Assoc., Inc. v. Snook, Ala.,339 So.2d 1011 (1976). The court determines the intent of the parties from the contract as a whole, Land Title Co. of Alabamav. State ex rel. Porter, 292 Ala. 691, 299 So.2d 289 (1974), and by examining the conduct and relation of the parties and the subject matter of the contract. Snook, supra.
Because it is presumed that parties intend to make reasonable contracts, Indus. Machinery, Inc. v. Creative Displays, Inc., Ala., 344 So.2d 743 (1977), a court will give an ambiguous contract a reasonable construction. International Harvester,supra.
Where the provisions of a lease are ambiguous, those provisions are to be construed most strongly against the lessor. Marcrum v. Embry, 291 Ala. 400, 282 So.2d 49 (1973).
In the instant case, the contract provisions at issue are subject to more than one possible interpretation and are therefore ambiguous. See, e.g., Southern Cafeteria OperatingCo., Inc. v. Eley, 52 Ala. App. 656, 296 So.2d 743 (1974). Paragraph 4)i) of the lease agreement provides in part:
 i) A moving consideration to the Club for execution of this lease is that there be available adjacent to the Club premises used for its other purposes, boating facilities for the storage, repair, construction and care of boats, a principal feature of the Club objectives being the conduct of a boating club. Therefore lessee agrees that during the term of this lease lessee will operate and conduct a first class boat repair service and boat-stall rental service on the leased premises, . . . and that all such operations shall be of top quality and kept in first class condition and repair, free of dilapidated and unsafe wharves, stalls, buildings and the like. . . . (Emphasis supplied.)
The plaintiff contends this provision unconditionally obligates the defendant to maintain a full-service marina and defendant's failure to do so is a material breach of the contract. The defendant maintains the obligation to operate a full-service marina is contingent upon sustained operations of the plaintiff's club as contemplated at the time of the contract. The trial court agreed with the defendant and we affirm.
As we noted above, the plaintiff's membership diminished over a ten-year period until the plaintiff finally leased the facility to the Elks Club. The record indicates that without the demand for marina services by plaintiff's members, defendant could not profitably operate the marina. Were we to accept the construction of the contract that plaintiff advances, i.e., that defendant is unconditionally obligated to maintain the facility, defendant would be unreasonably required to operate at a loss or terminate the lease. We find this result unreasonable considering the fact that the demand for a "full service" marina was eliminated by the actions of the plaintiff in abandoning its club facilities. See, e.g.,International Harvester, supra.
The plaintiff, however, contends that the unprofitability of a contract is an insufficient excuse for non performance. *Page 1029 
While we agree, the record reveals that economic infeasibility was merely a factor examined by the trial court in reaching its conclusion. As set forth above, the trial court's basic premise was that the parties did not intend for defendant to maintain full facilities if plaintiff abandoned active operations. Furthermore, we note that this is a reasonable construction of the contract because it does not deprive plaintiff of its right to realize income from the lease.
The plaintiff next maintains the defendant materially breached the terms of the lease which requires defendant to maintain a "reasonably adequate" facility. Specifically, the plaintiff argues that defendant failed to maintain the premises in good appearance and in a safe condition. In this regard, we note the trial court concluded that the lease was ambiguous but that defendant's business was a reasonably adequate facility as required by the contract. We agree.
We are of the opinion that the contractual requirement that defendant maintain a "reasonably adequate facility" is unclear. This is so because the contract does not set forth the standards by which "reasonably adequate" may be determined. It was therefore appropriate for the trial court to construe the agreement most favorably for the defendant. See Marcrum, supra.
In its determination of the meaning of the term "reasonably adequate facility," the trial court permitted testimony as to the condition of similar marinas in order to determine whether defendant's marina was reasonably adequate. The plaintiff contends this was error.
The record reveals that while the trial court found that some trash was scattered about defendant's premises, this was a normal condition for marinas in the area. The court also found that although some of defendant's structures were dilapidated (and ordered them repaired), defendant's operations were not unsafe. While such testimony could be considered immaterial, the determination of the materiality of evidence is largely within the discretion of the trial court. Mersereau v.Whitesburg Center, Inc., 47 Ala. App. 146, 251 So.2d 765 (1971). Therefore, we cannot say the trial court abused its discretion in considering the evidence.
Finally, the plaintiff maintains that it is due approximately $4,000 from the sale of four boats which were stalled at defendant's docks in 1973 by Mobile Bertram, Inc., a boat sales company. Specifically, the plaintiff relies on its contract which provides that it is to receive 3% from the sale of boats "sold by businesses conducted on the leased premises." We agree with the trial court's determination that plaintiff is not entitled to a percentage of these sales.
The record indicates that Bertram kept the four boats at defendant's marina, Bertram advertised that they were docked there, they were demonstrated there, and the defendant's employees worked on the boats. However, it is uncontroverted that Bertram had no office, telephone or salesmen at defendant's marina.
It is clear to this court that where, as here, a boat sales company does not have an office at defendant's marina, its sales are not covered by the contract. This is so because the contract expressly requires that in order for plaintiff to receive a percentage of the sale proceeds, the boats must be "sold by a business conducted on the leased premises." As noted above, the record shows that Bertram's business was not a business "conducted on the property."
Furthermore, the phrase "business conducted on the leased premises" is ambiguous as to these facts. It was therefore incumbent upon the trial court to interpret the phrase reasonably, construing it most strongly against the lessor.Marcrum, supra. Thus, the trial court was free to conclude that any set of circumstances not specifically included in the contract would be excluded. We also observe that had plaintiff desired such a contract provision, it could easily have drafted the agreement in clear language. See, e.g., WiregrassConstruction Co., Inc. v. Tallapoosa River Elec. Co-op, Inc., Ala.Civ.App., 365 So.2d 95 (1978). *Page 1030 
For the reasons stated, the verdict of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.